MICHAEL A. CISNEROS
ATTORNEY AT LAW
50 WEST LEMON AVENUE
SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

Michael A. Cisneros, SBN 105483
mcisneros@mac.com

Attorneys for Movant, Imperial Capital Bank

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Chapter 7 |
| JOSEPH A. GUSICH, | CASE NO. 10-40972 EDJ-7 |
| | R.S. No.: MAC-001 |
| Debtors | |
| IMPERIAL CAPITAL BANK, a division of CITY NATIONAL BANK, | Date: April 9, 2010<br>Time: 10:00 a.m.<br>Courtroom: "215" |
| Movant | |
| vs. | |
| JOSEPH A. GUSICH and PAUL MASDORF, Chapter 7 Trustee for the estate of JOSEPH A. GUSICH, | |
| Respondents | |

## DECLARATION OF MARGO STEKKINGER IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Margo Stekkinger, declare and state as follows:

1. I am employed by Imperial Capital Bank, a division of City National Bank ("Movant") in the capacity of Assistant Vice-President, Workout Officer with the Special Assets Department. I am a custodian of the books, records and files of the Bank as those books, records and files pertain to loans or extensions of credit by Movant to its borrower, Joseph A. Gusich

1

Declaration of Margo Stekkinger in Support of Motion for Relief from the Automatic Stay

("Debtors"). I have personally worked on said records, and as to the facts contained herein, I know them to be true of my own personal knowledge or have gained knowledge of them from the books, records and files of Movant which are prepared in the ordinary course of its business at or near the time of the acts or occurrences depicted or represented by such records. If called upon as a witness, I could and would competently testify to the facts contained herein as I have personal knowledge thereof.

2. In my position with Movant, I am familiar with the methods and procedures of receiving and considering applications for loans or extensions of credit and of Movant's maintaining its loan accounts and the computer system used in compiling and recording payments on its loans. The system used by Movant on all of its loans of the type herein is accurate and is the system relied upon by Movant in its processing and supervising of these types of loans. In a loan of this nature, payment invoices are issued or sent to the borrowers. When a payment is received by Movant, either accompanied by a loan payment coupon or otherwise identified to a particular loan, the payment is posted at the time of its receipt and this information is entered into the computer which is programmed to receive and store information concerning loans, including the payment history of balances due.

3. The records of Movant show that on or about September 8, 2006, Joseph A. Gusich ("Debtor") executed a Promissory Note (Texas) ("Note") whereby Imperial Capital Bank, a California commercial bank ("Movant") made a loan to the Debtor in the principal amount of $350,000.00. The Note was secured by an interest in certain Real Property located at 2625 – 2627 Meyers Street, Dallas, Texas 75215 ("Real Property"). In order to document Movant's interest in the Real Property the Debtor executed a Deed of Trust Debt, Assignment of Rents, Security Agreement and Fixture Filing ("Deed"), which was subsequently recorded with the Dallas County Recorder's Office on September 14, 2006 as document number 200600341728. The Note provided that the Debtors would commence making payments of $2,596.76 per month commencing on November 1, 2006 and continue on the 1st day of each month thereafter until October 1, 2036. True and correct copies of the Note and Deed are attached hereto, respectively marked Exhibits "1" and "2", and incorporated herein by this reference.

///

2

Declaration of Margo Stekkinger in Support of Motion for Relief from the Automatic Stay

Case: 10-40972    Doc# 19    Filed: 03/15/10    Entered: 03/15/10 11:59:15    Page 2 of 10

4. According to the records of Movant, the Debtor defaulted under the terms of the Note and Deed by failing to make the payment of principal and interest that came due on October 1, 2009 and all subsequent payments. The Debtor failed to payoff the loan or cure the default. The Debtor filed for bankruptcy relief under Chapter 7 on January 29, 2010, and Movant is now stayed from foreclosing or taking other action to collect on its obligation.

5. After receiving notice of the Debtor's Bankruptcy filing, Movant reviewed the Chapter 7 schedules filed by the Debtor. Although the debtor failed to schedule his interest in the real property in schedule A, he did schedule the obligation owed to Movant in his Schedule "D", showing a total owed of $342,527.00 and a value of the real property of $300,000.00. True and correct copies of the Debtor's Chapter 7 Schedules "A" and "D", are attached hereto, collectively marked Exhibit "3", and incorporated herein by this reference.

6. According to the records of Movant, as of February 2, 2010, there is a total owing by the Debtor to the Movant, on the Note the amount of $379,719.43 (exclusive of attorneys fees and costs). The Debtor has been in default under the Note since October 1, 2009, for a total default amount of $26,297.34 (as of January 8, 2010. A true and correct copy of Movant's calculations for reinstatement and payoff of the account on the Note are attached hereto, collectively marked Exhibit "4", and incorporated herein by this reference.

7. On January 15, 2010, Movant obtained an appraisal of the Real Property, through Integra realty Resources. The appraisal concluded that the fair market value of the Real Property was $180,000.00. A true and correct copy of the Appraisal, is attached hereto, marked Exhibit "5", and incorporated herein by this reference.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of February, 2010 at Glendale, California

By: _____
Margo Stekkinger, Declarant

3

Declaration of Margo Stekkinger in Support of Motion for Relief from the Automatic Stay

Case: 10-40972   Doc# 19   Filed: 03/15/10   Entered: 03/15/10 11:59:15   Page 3 of 10

# EXHIBIT "1"

# PROMISSORY NOTE
(Texas)

US $350,000.00                                                                                                        September 8, 2006

FOR VALUE RECEIVED, the undersigned, JOSEPH A. GUSICH ("Borrower") jointly and severally (if more than one) promise(s) to pay to the order of IMPERIAL CAPITAL BANK, a California commercial bank, the principal sum of THREE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS (US $350,000.00), with interest on the unpaid principal balance as set forth in Section 3 below.

1. **Defined Terms.** As used in this Note, (i) the term "Lender" means the holder of this Note, and (ii) the term "Indebtedness" means the principal of, interest on, or any other amounts due at any time under, this Note, the Security Instrument or any other Loan Document, including prepayment premiums, late charges, default interest, and advances to protect the security of the Security Instrument under Section 12 of the Security Instrument. "Event of Default" and other capitalized terms used but not defined in this Note shall have the meanings given to such terms in the Security Instrument.

2. **Address for Payment.** All payments due under this Note shall be payable at 700 N. Central Avenue, Suite 100, Glendale, CA 91203, Attn: Servicing, or such other place as may be designated by written notice to Borrower from or on behalf of Lender.

3. **Payment of Principal and Interest.** Payments shall be made in immediately available funds as follows:

(a) **General.** Monthly payments will be applied to interest before principal. Any remaining principal and interest shall be due and payable on October 1, 2036 or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise (the "Maturity Date"). At any time an Event of Default shall have occurred and be continuing and/or after maturity of the Loan, including maturity upon acceleration, the unpaid principal balance, all accrued and unpaid interest and all other amounts payable under the Note shall bear interest at the "Default Rate" set forth in this Note. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate set forth in this Note until and including the date on which it is paid in full. Any regularly scheduled monthly installment of principal and interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Interest under this Note shall be computed on the basis of a 360-day year and the actual number of days in each billing period for which interest is being calculated (divide the annual interest by 360, and multiply the quotient by the number of days in the billing period for which interest is being calculated). The amount payable as interest, or allocated to interest, will vary depending upon the number of days in the billing period for which interest is being calculated.

(b) **Initial Interest Rate; Borrower's Election Notice.** The initial interest rate charged on the unpaid principal of this Note shall be 8 percent (8%) per annum effective as of the date of disbursement to and excluding October 1, 2011. Thereafter, the interest rate the Borrower will pay may change in accordance with this Section 3. This Note provides for two alternative interest adjustment schedules, the first of which is described in Section 3(c) below (the "5-5-20 Option") and the second of which is described in Section 3(d) below (the "5-25 Option"). Unless Borrower timely exercises its option to elect the 5-25 Option as hereafter provided, then the 5-5-20 Option shall govern. Borrower may elect the 5-25 Option by giving written notice of election to Lender, which notice shall be given by U.S. Certified Mail, with a Return Receipt, addressed to Lender at Lender's address for notices as set forth in the Security Instrument, and which notice must be received by Lender (as evidenced by the return receipt) no earlier than June 1, 2011 and no later than August 1, 2011. If Lender does not receive such written notice from Borrower electing the 5-25 Option within such two month time period, then the 5-5-20 Option shall govern.

(c) **5-5-20 Option.** The provisions of this Section 3(c), which describe the 5-5-20 Option, shall govern unless Borrower timely exercises its option to elect the 5-25 Option in accordance with Section 3(b) above.

(i) **First Interest Rate Change.** The interest rate the Borrower will pay may change on October 1, 2011 (the "First Interest Change Date"). Before the First Interest Change Date, the Lender will calculate the Borrower's new interest rate by adding 3 percent (3%) to the Current Treasury Index. The Lender will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 3(c)(v) below, this rounded amount will be the new interest rate to and excluding October 1, 2016.

(ii) **The Treasury Index.** On the First Interest Change Date, the interest rate may change based on the Treasury Index. The "Treasury Index" will be based upon the weekly average yield on United States Treasury securities adjusted to a constant maturity of five years, as made available by the Federal Reserve Board. The most recent Treasury Index figure available forty-five (45) days before the First Interest Change Date is called the "Current Treasury Index." If the Treasury Index is no longer available, then Lender will choose a comparable alternate index. The selection of an alternate index shall be made in Lender's discretion. Lender will give Borrower notice of such selection.

(iii) **Subsequent Interest Rate Changes.** The interest rate the Borrower will pay may change again on October 1, 2016 (the "Second Interest Change Date") and on that day of the month every sixth (6th) month thereafter. Each date on which the interest rate could change is called an "Interest Change Date." Before each Interest Change Date,

Prepared by RoboDocs®
Texas Promissory Note
Loan No. 06070145

Case: 10-40972   Doc# 19   Filed: 03/15/10   Entered: 03/15/10 11:59:15   Page 5 of 10

Lender will calculate Borrower's new interest rate by adding 3 percent (3%) to the Current LIBOR Index. The Lender will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 3(c)(v) below, this rounded amount will be the new interest rate until the next Interest Change Date.

  (iv) **The LIBOR Index.** Beginning with the Second Interest Change Date, the interest will be based on the LIBOR Index. The "**LIBOR Index**" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, commonly known as "Six Month LIBOR", as published in *The Wall Street Journal*. The most recent LIBOR Index figure available forty-five (45) days before each Second Interest Change Date is called the "**Current LIBOR Index.**" If the LIBOR Index is no longer available, then Lender will choose a new index that is based upon comparable information. The selection of an alternate index shall be made in Lender's sole discretion. Lender will give Borrower notice of such selection.

  (v) **Limits on Interest Rate Changes under 5-5-20 Option.** The interest rate Borrower is required to pay commencing on the First Interest Change Date and commencing on the Second Interest Change Date shall not be greater than **13 percent (13%)** per annum nor less than **7 percent (7%)** per annum. After the Second Interest Change Date, and throughout the remaining term of this Note: (A) Borrower's interest rate will never be increased or decreased on any single Interest Change Date by more than **one percent (1%)** from the rate of interest previously in effect; and (B) Borrower's interest rate will never be greater than 13 percent (13%) per annum nor less than **7 percent (7%)** per annum.

 (d) **5-25 Option.** The provisions of this Section 3(d), which describe the 5-25 Option, shall govern if and only if Borrower timely exercises its option to elect the 5-25 Option in accordance with Section 3(b) above.

  (i) **Interest Rate Changes.** The interest rate the Borrower will pay may change on **October 1, 2011** (the "**First Interest Change Date**") and on that day of the month every **sixth (6th)** month thereafter. Each date on which the interest rate could change is called an "**Interest Change Date.**" Before each Interest Change Date, the Lender will calculate the Borrower's new interest rate by adding **3 percent (3%)** to the Current LIBOR Index. The Lender will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 3(d)(iii) below, this rounded amount will be the new interest rate until the next Interest Change Date.

  (ii) **The LIBOR Index.** Beginning with the First Interest Change Date, the interest will be based on the LIBOR Index. The "**LIBOR Index**" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, commonly known as "Six Month LIBOR", as published in *The Wall Street Journal*. The most recent LIBOR Index figure available forty-five (45) days before each Interest Change Date is called the "**Current LIBOR Index.**" If the LIBOR Index is no longer available, then Lender will choose a new index that is based upon comparable information. The selection of an alternate index shall be made in Lender's sole discretion. Lender will give Borrower notice of such selection.

  (iii) **Limits on Interest Rate Changes under 5-25 Option.** The interest rate Borrower is required to pay commencing on the First Interest Change Date shall not be greater than **13 percent (13%)** per annum nor less than **7 percent (7%)** per annum. After the First Interest Change Date, and throughout the remaining term of this Note: (A) Borrower's interest rate will never be increased or decreased on any single Interest Change Date by more than **one percent (1%)** from the rate of interest previously in effect; and (B) Borrower's interest rate will never be greater than **13 percent (13%)** per annum nor less than **7 percent (7%)** per annum.

 (e) **Payments.** Principal and interest shall be paid as follows:

  (i) **Interest Only Payment.** Unless disbursement of principal is made by Lender to Borrower on the first day of the month, interest for the period beginning on the date of disbursement and ending on and including the last day of the month in which such disbursement is made shall be payable upon the initial funding of the loan evidenced by this Note.

  (ii) **Amount of Initial Monthly Payments.** Monthly payments of principal and interest, initially in the amount of **TWO THOUSAND FIVE HUNDRED NINETY-SIX AND 76/100 DOLLARS (U.S. $2,596.76)**, shall be due and payable commencing on **November 1, 2006**, and on the same day of every calendar month thereafter through and including the date this Note if fully repaid. The amount of the initial monthly payment of principal and interest is the amount that would be sufficient to repay the face amount of this Note in full on the Maturity Date in substantially equal monthly payments at the initial interest rate. Although a fixed (subject to adjustment as provided below) monthly installment of principal and interest is required to be paid by Borrower, the amount of each installment attributable to principal and the amount attributable to interest will vary based upon the number of days in the month for which such installment is paid. Each monthly installment of principal and interest will first be applied to pay in full interest due for the month, and the balance of the monthly installment paid by Borrower will be credited to principal.

  (iii) **Change In Monthly Payments.** The monthly payments shall change each time the interest rate changes pursuant to Section 3(c) or 3(d) (whichever is applicable) of this Note. Changes in monthly payments will reflect changes in the unpaid principal of the loan and in the interest rate. Lender will determine the amount of the new monthly payment in an amount that would be sufficient to repay the unpaid principal that is expected to be owed at the Interest Change Date in full on the Maturity Date at the new interest rate in substantially equal monthly payments.

Case: 10-40972   Doc# 19   Filed: 03/15/10   Entered: 03/15/10 11:59:15   Page 6 of 10

(f) **Effective Date of Changes.** The new interest rate will become effective on each Interest Change Date. Borrower will pay the new monthly payment beginning on the monthly payment due date next following such Interest Change Date.

(g) **Notice of Changes.** The Lender will deliver or mail a notice of any changes in the Borrower's interest rate and the amount of the new monthly payment promptly upon the calculation of such changes.

(h) **Failure to Make Adjustments.** If for any reason Lender fails to make an adjustment to the interest rate or the monthly payment amount as described in this Note, regardless of any notice requirement, Lender may, upon discovery of such failure, then make such adjustment as if it had been made on time. Borrower further agrees to pay upon demand any additional monies which Borrower may owe as a result of any such adjustment. Borrower agrees not to hold Lender responsible for any damages that may result from Lender's failure to make the adjustment and to allow Lender, at its option, to apply any excess monies which Borrower may have paid to partial prepayment of the unpaid principal balance of this Note.

4. **Application of Payments.** If at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, Lender may apply the amount received to amounts then due and payable in any manner and in any order determined by Lender, in Lender's discretion. Borrower agrees that neither Lender's acceptance of a payment from Borrower in an amount that is less than all amounts then due and payable nor Lender's application of such payment shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction.

5. **Security.** The Indebtedness is secured, among other things, by that certain deed of trust, mortgage or security deed dated as of the date of this Note and executed by Borrower in favor of Lender (the "**Security Instrument**"), and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness.

6. **Acceleration.** If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium payable under Section 10, if any, and all other amounts payable under this Note and any other Loan Document shall at once become due and payable, at the option of Lender, without any prior notice to Borrower. Lender may exercise this option to accelerate regardless of any prior forbearance.

7. **Late Charge.** If any monthly installment of interest or principal and interest or other amount payable under this Note or under the Security Instrument or any other Loan Document is not received in full by Lender within ten (10) days after the installment or other amount is due (unless applicable law requires a longer period of time before a late charge may be imposed, in which event such longer period shall be substituted), Borrower shall pay to Lender, immediately and without demand by Lender, a late charge equal to ten percent (10%) of such installment or other amount due (unless applicable law requires a lesser amount be charged, in which event such lesser amount shall be substituted). Borrower acknowledges that its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the loan evidenced by this Note (the "**Loan**") and that it is extremely difficult and impractical to determine those additional expenses. Borrower agrees that the late charge payable pursuant to this Section represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional expenses Lender will incur by reason of such late payment. The late charge is payable in addition to, and not in lieu of, any interest payable at the Default Rate pursuant to Section 8.

8. **Default Rate.** So long as (a) any monthly installment under this Note remains past due for thirty (30) days or more or (b) any other Event of Default has occurred and is continuing, interest under this Note shall accrue on the unpaid principal balance from the earlier of the due date of the first unpaid monthly installment or the occurrence of such other Event of Default, as applicable, at a rate (the "**Default Rate**") equal to the lesser of eighteen percent (18%) per annum or the maximum interest rate which may be collected from Borrower under applicable law. If the unpaid principal balance and all accrued interest are not paid in full on the Maturity Date, the unpaid principal balance and all accrued interest shall bear interest from the Maturity Date at the Default Rate. Borrower acknowledges that (a) its failure to make timely payments will cause Lender to incur additional expenses in servicing and processing the Loan, (b) during the time that any monthly installment under this Note is delinquent for thirty (30) days or more, Lender will incur additional costs and expenses arising from its loss of the use of the money due and from the adverse impact on Lender's ability to meet its other obligations and to take advantage of other investment opportunities; and (c) it is extremely difficult and impractical to determine those additional costs and expenses. Borrower also acknowledges that, during the time that any monthly installment under this Note is delinquent for thirty (30) days or more or any other Event of Default has occurred and is continuing, Lender's risk of nonpayment of this Note will be materially increased and Lender is entitled to be compensated for such increased risk. Borrower agrees that the increase in the rate of interest payable under this Note to the Default Rate represents a fair and reasonable estimate, taking into account all circumstances existing on the date of this Note, of the additional costs and expenses Lender will incur by reason of the Borrower's delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquent loan. During any period that the Default Rate is in effect the additional interest accruing over and above the rate stated in Section 3 of this Note shall be immediately due and payable in addition to the regularly scheduled principal and interest payments.

Case: 10-40972   Doc# 19   Filed: 03/15/10   Entered: 03/15/10 11:59:15   Page 7 of 10

9. **Full Recourse Liability.** Borrower shall have full recourse liability under this Note, the Security Instrument and any and all other Loan Documents for the repayment of the Indebtedness and for the performance of any and all other obligations of Borrower under the Loan Documents.

10. **Voluntary and Involuntary Prepayments.**

(a) A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

(i) Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a Notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to Section 10(f) of this Note. For purposes of this Note, a "**Business Day**" means any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but excluding the determination of the prepayment date under Section 10(f) of this Note, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

(ii) Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "**Partial Prepayment**") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to Section 10(f) of this Note, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii) Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) and all other sums due Lender, and (C) the prepayment premium calculated pursuant to Section 10(f) of this Note, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv) Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the Maturity Date and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to Section 10(f) of this Note without Borrower having to pay out-of-pocket any additional amounts.

(b) Notwithstanding the provisions of Section 10(a), no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined in Section 10(f) of this Note), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument; or (C) a Partial Prepayment in an amount that, when aggregated with other prepayments made during the preceding twelve (12) months, is not greater than **five percent (5%)** of the original principal balance of this Note.

(c) Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(d) Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender's incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth in Section 10(f) represents a reasonable estimate of the damages Lender will incur because of a prepayment.

(e) Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

(f) Any prepayment premium payable under this Section 10 shall be computed as follows:

(i) If the prepayment is made between the date of this Note and the date that is **ten years** after the date of this Note (the "**Prepayment Premium Period**"), the prepayment premium shall be as follows:

(A) If prepayment is made during the first year of the Prepayment Premium Period, the prepayment premium shall be **five percent (5%)** of the principal amount being prepaid;

(B) If prepayment is made during the second year of the Prepayment Premium Period, the prepayment premium shall be **four percent (4%)** of the principal amount being prepaid;

(C) If prepayment is made during the third year of the Prepayment Premium Period, the prepayment premium shall be equal to **three percent (3%)** of the principal amount being prepaid;

(D) If prepayment is made during the fourth year of the Prepayment Premium Period, the prepayment premium shall be equal to **two percent (2%)** of the principal amount being prepaid;

Case: 10-40972    Doc# 19    Filed: 03/15/10    Entered: 03/15/10 11:59:15    Page 8 of 10

(E) If prepayment is made during the fifth year of the Prepayment Premium Period, the prepayment premium shall be equal to **one percent (1%)** of the principal amount being prepaid (provided that no prepayment premium shall be due if prepayment is made during the last ninety days of the fifth year of the Prepayment Premium Period);

(F) If prepayment is made during the sixth year of the Prepayment Premium Period, the prepayment premium shall be **five percent (5%)** of the principal amount being prepaid;

(G) If prepayment is made during the seventh year of the Prepayment Premium Period, the prepayment premium shall be **four percent (4%)** of the principal amount being prepaid;

(H) If prepayment is made during the eighth year of the Prepayment Premium Period, the prepayment premium shall be equal to **three percent (3%)** of the principal amount being prepaid;

(I) If prepayment is made during the ninth year of the Prepayment Premium Period, the prepayment premium shall be equal to **two percent (2%)** of the principal amount being prepaid; and

(J) If prepayment is made during the tenth year of the Prepayment Premium Period, the prepayment premium shall be equal to **one percent (1%)** of the principal amount being prepaid.

(ii) Notwithstanding the foregoing, if and only if Borrower timely exercises its option to elect the 5-25 Option in accordance with Section 3(b) above, then no prepayment premium shall be due after the end of the fifth year of the Prepayment Premium Period. If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

11. **Costs and Expenses.** To the fullest extent allowed by applicable law, Borrower shall pay all expenses and costs, including fees and out-of-pocket expenses of attorneys (including Lender's in-house attorneys) and expert witnesses and costs of investigation, incurred by Lender as a result of any default under this Note or in connection with efforts to collect any amount due under this Note, or to enforce the provisions of any of the other Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy proceeding (including any action for relief from the automatic stay of any bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

12. **Forbearance.** Any forbearance by Lender in exercising any right or remedy under this Note, the Security Instrument, or any other Loan Document or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of that or any other right or remedy. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment. Enforcement by Lender of any security for Borrower's obligations under this Note shall not constitute an election by Lender of remedies so as to preclude the exercise of any other right or remedy available to Lender.

13. **Waivers.** Presentment, demand, notice of dishonor, protest, notice of acceleration, notice of intent to demand or accelerate payment or maturity, presentment for payment, notice of nonpayment, grace, and diligence in collecting the Indebtedness are waived by Borrower and all endorsers and guarantors of this Note and all other third party obligors.

14. **Loan Charges.** Borrower and Lender intend at all times to comply with the law of the State of Texas governing the Maximum Interest Rate or maximum amount of interest payable on or in connection with this Note and the Indebtedness (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under this Note or under any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or of acceleration of the maturity of this Note, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by any applicable law, then Borrower and Lender expressly intend that all excess amounts collected by Lender shall be applied to reduce the unpaid principal balance of this Note (or, if this Note has been or would thereby be paid in full, shall be refunded to Borrower), and the provisions of this Note, the Security Instrument and any other Loan Documents immediately shall be deemed reformed and the amounts thereafter collectible under this Note or any other Loan Document reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under this Note or any other Loan Document. The right to accelerate the Maturity Date of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in this Note, the Security Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of this Note, the total amount of interest that Borrower is obligated to pay and Lender is entitled to receive with respect to the Indebtedness shall not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances

Case: 10-40972    Doc# 19    Filed: 03/15/10    Entered: 03/15/10 11:59:15    Page 9 of 10

and any advances made pursuant to the Security Instrument or other Loan Documents (such as for the payment of taxes, insurance premiums and similar expenses or costs).

15. **Purpose of Indebtedness.** Borrower represents that the Indebtedness is not being incurred by Borrower for personal, family or household purposes.

16. **Counting of Days.** Except where otherwise specifically provided, any reference in this Note to a period of "days" means calendar days, not Business Days.

17. **Governing Law.** This Note shall be governed by the laws of the jurisdiction in which the Land is located.

18. **Captions.** The captions of the paragraphs of this Note are for convenience only and shall be disregarded in construing this Note.

19. **Notices.** All notices, demands and other communications required or permitted to be given by Lender to Borrower pursuant to this Note shall be given in accordance with Section 31 of the Security Instrument.

20. **Consent to Jurisdiction and Venue.** Borrower agrees that any controversy arising under or in relation to this Note shall be litigated exclusively in the jurisdiction in which the Land is located (the "Property Jurisdiction"). The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to this Note. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

21. **Counterparts.** This Note may be executed in any number of counterparts each of which shall be deemed an original, but all such counterparts together shall constitute but one Note.

22. **WAIVER OF TRIAL BY JURY.** BORROWER AND LENDER EACH (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS NOTE OR THE RELATIONSHIP BETWEEN THE PARTIES AS LENDER AND BORROWER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

IN WITNESS WHEREOF, and in consideration of the Lender's agreement to lend Borrower the principal amount set forth above, Borrower has signed and delivered this Note under seal or has caused this Note to be signed and delivered under seal by its duly authorized representative.

**BORROWER:**

_/s/ Joseph A. Gusich_
JOSEPH A. GUSICH

Case: 10-40972   Doc# 19   Filed: 03/15/10   Entered: 03/15/10 11:59:15   Page 10 of 10